United States District Court
Southern District of Texas

**ENTERED**

March 12, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| United States of America, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | |
| | § | **No. 4:46-mj-156** |
| Grace Dawn Kirkness, | § | |
| | § | |
| *Defendant.* | § | |

## ORDER OF RELEASE

Defendant Grace Kirkness is charged in a criminal complaint with forcibly assaulting a federal officer in violation of 18 U.S.C. § 111(a)(1). On March 04, 2026, at the Defendant's initial appearance, the Government moved to detain the Defendant pending the trial of this matter. The Court expressed its inclination to release the Defendant based on her mental health issues and suggested the Government consider dismissing the charges. The Government was not prepared to agree without further investigation of the facts. The Court held a status conference on March 9, 2026. At that time, the Government stated its intention to go forward with the charges and requested a detention hearing. On March 11, 2026, the Court held a detention hearing and heard evidence from the Government's witness.

When considering the Government's motion for detention, the Court is guided by several general principles:

First, Defendant is entitled to the presumption of innocence. Nothing that took place in the detention hearing or set forth in the Court's findings is intended or should be construed to affect that presumption. Rather, the purpose of this hearing is to determine whether, notwithstanding that presumption of innocence, the Defendant should be detained pending trial.

Second, under the Bail Reform Act, pretrial detention is an exceptional step. Under the Act, a Defendant must be released prior to trial unless the Court finds that no conditions or combination of conditions exist which will reasonably assure the appearance of the Defendant or the safety of the community.

1

The Act requires that the least restrictive conditions be imposed that are necessary to provide those reasonable assurances. If the Court cannot find any conditions that will reasonably assure:

- The appearance of the Defendant as required or
- The safety of people in the community,

Then, under the Act, the Court must order the Defendant held in custody.

In this case, the Government has not stated on the record under which provision it seeks detention. The charges in this case do not fall under any of the provisions of 18 U.S.C. § 3142(f)(1), which include certain defined violent crimes, drug crimes punishable by more than ten years in prison, and sexual exploitation of minors. Thus, the Government seeks to detain the Defendant under Section 3142(f)(2) on the basis that Ms. Kirkness is a serious flight risk. To establish that she is a flight risk, the Government must show by a preponderance of the evidence that no conditions or combination of conditions will reasonably assure the Defendant's presence as required.

**The Bail Reform Act**

Under the Bail Reform Act, the Court is required to consider four specific factors:

(1) The nature and circumstances of the alleged offense.
(2) The weight of the evidence against the Defendants.
(3) The history and characteristics of the Defendants.
(4) The nature and seriousness of the danger to others or the community.

18 U.S.C. § 3142(g). The Court has considered all the evidence on these factors and has considered the Pretrial Services recommendation.

**The nature and circumstances of the alleged offenses and the weight of the evidence:**

The Court signed the criminal complaint after finding probable cause based on the supporting affidavit. The Court conducted a preliminary hearing at the same time as the detention hearing. After the hearing, while finding probable cause for the charge, the Court expressed reservations about the charge given the evidence submitted in the form of a video of the incident and the testimony of the Senior Special Agent ("Special Agent") charged with investigating the incident.

On January 21, 2026, the assault that forms the basis of this charge occurred at a private detention center that is a under contract with Immigration and Customs Enforcement ("ICE"). The testimony is that a private contractor runs this detention center and is charged with acting on behalf of ICE to carry out some of ICE's immigration duties, including detaining inmates awaiting deportation. Ms. Kirkness was such an inmate awaiting deportation. According to the PTS report, Ms. Kirkness has been in ICE custody for the past six months awaiting deportation. A final order of deportation had been issued, ordering that she be deported to Canada.

The Special Agent works for the Department of Homeland Security ("HSI") in the Office of Professional Responsibility. Part of his duties is to investigate wrongdoing by HSI employees as well as inmates. He was tasked with investigating the incident that forms the basis of the charge here. Based on his investigation, he found no wrongdoing on the part of the detention facility employees involved in the incident.

The Special Agent testified that one of the officers filmed the incident, which was customary when the officers anticipated resistance from an inmate. The video showed Ms. Kirkness standing against a wall in the hallway of the detention center, surrounded by several contract officers, including Captain Pierce. The video started with Captain Pierce stating to the camera that he was going to give Ms. Kirkness three chances to comply with his order to turn around and submit to them putting handcuffs on her. If she did not comply, they would forcibly restrain her. When the Court asked why she was being put in handcuffs, the Special Agent was unable to give the reason other than she was going to be put in handcuffs if she did not comply. Special Agent was unaware of what led to the decision to restrain her.

The witness statements, Def.'s Exh. 3, indicate that there was a verbal altercation between Ms. Kirkness and Officer Lewis and Officer Ayala before bedtime. Ms. Kirkness was apparently not wearing her pants to bed. Officer Lewis instructed her to put on her pants. Ms. Kirkness refused. At some point, she was removed from the room and taken into the hall for a period of time and then returned to the room. At some point, Ms. Kirkness put on her pants, although it is not clear if it was before she was removed from the room the first time. A short while later, Captain Pierce came to the room and Ms. Kirkness was removed from the room again. At that point, she was fully clothed in her prison pants and top. This is where the video starts.

Captain Pierce instructed Ms. Kirkness to turn around so that she could be handcuffed. Ms. Kirkness asked what she had done. Captain Pierce repeated his instructions two more times. Ms. Kirkness cursed and repeatedly asked what she had done to warrant sending her to isolation, which is apparently where they would take her after she was handcuffed. After she did not comply with the third command, the officers surrounded her and attempted to grab her to handcuff her. Ms. Kirkness resisted, throwing a punch that hit Officer McGowan in the face. The officers struggled and got Ms. Kirkness to the floor, where she continued to resist, kicking, spitting, and cursing, until they got her face down on the floor, had her in handcuffs, and she was pinned to the floor under an officer's knee. The entire incident took less than a 90 seconds. After she was on the floor subdued, Captain Pierce radioed for leg restraints. He also requested a wheelchair for Ms. Kirkness because she was unable to walk or move after the altercation.

During the struggle, Ms. McGowan yelled out that Ms. Kirkness bit her finger. The video does not show Ms. Kirkness biting or punching anyone else. The Special Agent testified, however, that two others were injured. Captain Pierce claimed that he was bitten during the altercation. Gov't Exh. 2 is a picture of his leg with a small bruise that is purportedly the bite. Captain Pierce suffers from diabetes. As a result, his injury got worse. Gov't Exh. 3 shows his bite looking infected. Gov't Exh. 4 shows the bite with a scab as it was healing. A third officer, Officer DeDure, did not report any injury at the time but the next day suffered from a swollen finger. Ms. Kirkness was also injured in the scuffle. She had a red mark on her face under her eye. It is not clear if she suffered any other injuries.

Special Agent testified that the Officers were attempting to de-escalate the situation when they removed Ms. Kirkness from the dorm room and took her into the hallway. The evidence shows anything but de-escalation. The tone of Captain Pierce's voice and commands were not conciliatory or in any way designed to try to calm Ms. Kirkness down. In fact, she was calm until the officers started to handcuff her. The video shows that no one there had any training in how to deal with a mentally ill detainee or a person who suffers from low intelligence. It also shows they have no training on how to subdue an unruly inmate. The incident was akin to a school yard brawl as opposed to law enforcement acting in any kind of trained or professional manner to subdue a detainee. Special Agent testified he was not aware of the training the private contract employees received, was not aware of any protocols the detention facility had regarding the handling of detainees with disabilities or those who are mentally impaired, and he was unaware of ICE protocols on that subject. The Court finds it incredulous that the Special Agent can find no wrongdoing on the part of the officers when he did not know what led to

4

the determination that she should be removed from the room the second time, why they determined that the detainee needed to be put in handcuffs, whether there were any protocols for handling mentally ill patients, or whether those protocols had been violated.

Thus, while at first blush it looks like the weight of the evidence against Defendant is strong, on closer examination of the circumstances leading up to the incident and the officers' lack of training on de-escalation of mentally ill inmates shows that the weight of the evidence against her is not that strong.

**History and characteristics of the Defendant**

Defendant and her family moved to Texas when she was about 11 years old. Her parents have become U.S. citizens. Ms. Kirkness was a legal resident before she was convicted five years ago and subsequently lost her legal status. She is now facing deportation. Her family would like for her to stay here to obtain treatment close to home. They hired a lawyer and fought the deportation proceedings but lost. A final order of deportation has been entered.

Defendant's evidence establishes that Ms. Kirkness suffers from a lifetime of mental illness, starting when she was an infant. She also suffers from low intelligence. She has been treated for mental health issues since she was 6 years old. She has had multiple diagnoses from various providers. Defendant's Exhs. 1 and 2 contain psychological evaluations of her and detail her history of mental health illness. Her illness is difficult to treat but can be effectively managed with medicine. When her illness is not treated, she becomes unstable. This is what led to her arrest at age 20. Although she was in Texas Department of Corrections ("TDC") for five years on an assault charge involving an EMS personnel, and had a harassment charge while incarcerated, she otherwise has no criminal record. Her criminal issues have arisen in custodial settings. Part of her mental health issue is an inability to navigate social encounters, her adaptive functioning skills are compromised, and she cannot accurately interpret the nuances of nonverbal communication or understand or properly react in the context of that communication. *See* Def.'s Exh. 2 at 7.

Thus, the Court finds that there is ample evidence showing that Ms. Kirkness suffers from severe mental illness and low intelligence. This impacts her ability to interact with others or to understand nonverbal cues. As a result, she gets combative and defensive. The evidence further establishes that the officers had no training in de-escalating issues with detainees or the proper handling of detainees with mental illness. The evidence suggests that the officers may have provoked

Ms. Kirkness without cause. Given her mental health issues and low intelligence, if the evidence were found credible by the jury, the Defendant could be found not guilty.

## Danger to the community

The Government argues that Ms. Kirkness is a danger to the community because she has no regard for authority. Despite the Officers' efforts at de-escalation, the Government asserts that she assaulted the three officers. The Government points to her two state felonies for assault and harassment, one of which it admits occurred while she was incarcerated. The Government argues Ms. Kirkness is a violent person and should be detained. Further, it asserts that her attack must be prosecuted to deter other inmates from acting out. Deterrence is not a basis for detention under the Bail Reform Act.

There is no credible evidence that this Defendant is a danger to the community. While she has a prior assault and a harassment conviction and this charge alleges assault, those incidents occurred in custodial settings. The Court already found that the Officers did not de-escalate the situation. Their actions just created a situation that was not only unnecessary but totally avoidable. This is exactly why Defendant does not belong in a custodial law enforcement setting with untrained officers who will only incite her to act out and then blame her for her actions.

As the Government argued, Ms. Kirkness' symptoms can be managed. When Defendant is compliant with her medication and under treatment, she is not a danger to the community. She has the support of her family. Her mother and father attended the first two hearings, leaving work to do so. Her father attended the third hearing today. Defendant's parents have the resources to provide her with the proper medical attention and have shown that they are ready to do so when she is released. In fact, if Defendant is deported, her parents have already found a provider in Canada that can assess and treat her. *See* Def.'s Exh. 4. If she is deported, it will create a hardship on her family because one of her parents (her mother) will have to quit her job and move to Canada to assist Ms. Kirkness. However, her parents have indicated that they are willing to do this to support their daughter.

## Conclusion

The Government argues that the Defendant is a flight risk, because she is facing a long prison sentence of at least 53 months. This is the only argument that the Government made on flight risk. It offered no evidence on the issue of flight risk,

other than the evidence regarding the charges themselves. Unfortunately, Defendant is likely to be deported if released because there is a final order of deportation. On questioning from the Court, the Government was not able to provide any information on whether ICE would consider putting the deportation order on hold. The Executive Branch controls both prosecutions and deportations. If the Executive Branch wants Ms. Kirkness here to face charges, it can decide not to deport her. This is within the Government's control, not the Court's or Defendant's control. Moreover, the Defendant's parents have the resources to provide her with proper medical care for her mental health issues and are ready to do so. They would like for her to stay here and there is no evidence to indicate that Defendant would flee if released and she was not deported. She has lived in the this country since she was 11 years old. She has no family in Canada, where she would be deported. Her parents and brother live in Texas. While any defendant with financial means who is so inclined can easily flee the jurisdiction or go underground, the question is whether there are conditions that could reasonably assure the Defendant's appearance.

The factors suggesting flight include that: Defendant is a Canadian citizen and has lost her legal status in the United States; Defendant's parents have resources; Defendant is facing jail time if convicted on these charges. On the other hand, the Defendant has strong ties to this community; both of her parents are U.S. citizens; they live and work in Texas; Defendant has lived here most of her life; Defendant has no family in Canada.

The Court finds that there are conditions that can be established to secure their appearance, including the following:

Bond $15,000 unsecured

GPS location device

Must reside with her parents who will act as 3d party custodians

Travel limited to Collin County and surrounding counties, with travel to Houston for court and attorney visits. Travel permitted for medical care wherever they can find it.

This Order is stayed until Friday March 13, 2026, at noon, pending the Government filing an appeal with Judge Bennett. If an order reversing or extending the stay is not entered before then, the Defendant is Ordered released pursuant to the bond conditions previously entered.

7

Signed on March 11, 2026, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge