**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | |
| Plaintiff, | |
| v. | **CASE NO. 4:26-MJ-156** |
| **GRACE DAWN KIRKNESS**, | |
| Defendant. | |

**UNITED STATES' EMERGENCY MOTION TO STAY**
**AND REVOKE MAGISTRATE'S RELEASE ORDER**

The United States moves to stay the pretrial release order United States Magistrate Judge Dena Palermo issued for Defendant Grace Kirkness in this case pending this Court's review of that order. The United States further requests a prompt deadline for it to brief why this Court should revoke the presiding Magistrate Judge's release order and detain Defendant pending trial. The Court should revoke the pending pretrial release order because, at the very least, it appears that presiding Magistrate Judge Dena Palermo pre-judged both the Government's overall case and its motion to detain Defendant Kirkness.[1]

## I. SUMMARY

This Motion is intended to give the Court a summary overview of the Government's argument for a stay and for detention. The Government will, however, require transcripts of several separate hearings to fully develop its argument. The Government is obtaining the transcripts on an expedited basis.

---

[1]This case has not yet been presented to the grand jury. The Government expects to do so within one to two weeks.

1

The Court should conduct a *de novo* review of Judge Palermo's decision to release Defendant on bond because, at the very least, it appears Judge Palermo pre-judged the Government's case and its motion to detain. To that end, Judge Palermo in her release order states that "at the Defendant's initial appearance, the Government moved to detain the Defendant pending the trial of this matter. The Court expressed its inclination to release the Defendant based on her mental health issues ***and suggested the Government consider dismissing the charges.***" ECF 11 at 1 (emphasis added).

Judge Palermo's "suggestion" at the *initial appearance* that the Government *dismiss the charges* was, standing alone, a blatant and inappropriate attempt to interfere in the Government's case. The mere fact that she did so casts a pall over her decision to grant bond that cannot be overcome, and which therefore requires *de novo* review by the District Court. Further exacerbating the matter, Judge Palermo's statement indicates that she decided the issue of detention *before the detention hearing was even held.* This procedural history indicates that the Government never had a chance with respect to detention.

Separate and apart from those issues, the evidence favors detention under applicable law, as explained below.

## II.  FACTUAL AND PROCEDURAL HISTORY.

Defendant is a demonstrably violent person. She was convicted in 2021 in Harris County Court of felony assault on a public servant, a crime for which she received a five-year sentence. Approximately 11 months after her arrest for that offense, she was arrested again and ultimately convicted of Harassment By A Person In A Correctional Facility. She received a second five-year sentence for that crime.

Defendant, a Canadian citizen who had been living in the United States as a lawful permanent resident, was placed in removal proceedings following the end of her incarceration. She was detained at the Houston Contract Detention Facility (HCDF) while awaiting removal to Canada when the incident in question took place. HCDF is a private facility that operates under a contract with U.S. Immigration and Customs Enforcement to house immigration detainees. (There is an immigration detainer pending against Defendant should she be released from U.S. Marshals custody.)

The incident occurred on January 21, 2026. It was recorded on video by a Detention Officer as part of standard facility procedures for documenting encounters with detainees who violate institutional rules.

That day, Defendant caused a disturbance in her dormitory. Detention Officers removed her from the dorm to deescalate the situation. The Officers eventually decided to place Defendant in handcuffs, apparently to remove her to administrative segregation, and asked Defendant to turn around to be handcuffed. She was given multiple orders to do so, but refused to obey. When the Officers moved in to do so, Defendant punched an Officer in the face:



The Officers then took Defendant to the ground. Defendant repeatedly kicked and spat on the Officers, calling one a n****r. Defendant bit at least two Officers. She bit through one Officer's pants leg, causing a flesh wound:



That victim is a diabetic. The wound worsened after the attack, requiring the Officer to undergo a course of antibiotics:



Another Officer was kicked in the hand and required occupational therapy for his injury.

Defendant was subdued in approximately one minute and 20 seconds, handcuffed and placed in leg restraints. She was then placed in a wheelchair and taken to the Facility's medical unit to be checked. She refused to answer when the on-duty nurse asked her if she was in pain.[2]

Judge Palermo signed the Complaint against Defendant on March 2, 2026, which charged Defendant with Assault on a Federal Officer in violation of 18 U.S.C. § 111(a)(1). ECF 1. The next day, Defendant was arrested, had her initial appearance and was temporarily detained. ECF 3. Judge Palermo at the initial appearance urged the United States to dismiss the case due to Defendant's alleged mental illness. ECF 11 at 1. She did so despite any formal evaluation ordered by the Court under 18 U.S.C. §§ 4241 et. seq. and in contravention to the broad discretion the Attorney General and United States Attorneys have to enforce the Nation's criminal laws. *United States v. Armstrong*, 517 U.S. 456, 464, 116 S. Ct. 1480, 1486, 134 L. Ed. 2d 687 (1996) (In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion."). The United States declined the Court's request.

A counsel determination hearing was held on March 4, 2026, at which attorney Joel Bennett was appointed to represent Defendant. ECF 4. A status conference was held on March 9, 2026, at which the Government confirmed its decision to seek detention. The detention hearing was held on March 11, 2026.

---

[2]Judge Palermo writes that the wheelchair was requested because Defendant "was unable to walk or move after the altercation." ECF 11 at 4. There was no evidence put forward at the detention hearing as to why the senior officer on scene requested the wheelchair and amounted to speculation. An entirely plausible reason for the chair was that Kirkness was in leg restraints and using a wheelchair was the quickest way to transport her to the Facility's medical unit. Keeping Kirkness in the wheelchair would have also prevented her from kicking the Officers.

It was evident to the United States, even before the preliminary and detention hearing began, that Judge Palermo had decided, prior to receiving or evaluating any testimonial or documentary evidence from the Government, that she would release Defendant on bond. Nevertheless, the Government at the detention hearing presented evidence of the assault, including the video of the incident and testimony from the case agent. Defendant put forth various documents which state that she has suffered from lifelong mental illness, and Defense counsel represented to the Court that Defendant's family would, once she is removed to Canada, seek to admit her to a hospital in Ottawa, Ontario, Canada, presumably for inpatient treatment.

Defendant's mental illness argues in favor of detention. Indeed, the initial Pretrial Services Report cites her illness as a factor favoring detention.

After an almost two-hour preliminary and detention hearing, Judge Palermo took the case under advisement. She then recalled the case, "reluctantly" found probable cause, then, as anticipated, ordered Defendant released on conditions. Despite Defendant's two felony convictions, the video of the incident and evidence as to the Detention Officer's injuries, Judge Palermo found "no credible evidence that . . . Defendant is a danger to the community." ECF 11 at 6. The Court's bond conditions included a $15,000 unsecured bond, residing with her parents and travel limitations. *Id*. at 7. At the Government's request, Judge Palermo added GPS monitoring. *Id*.

III.     **APPLICABLE LEGAL STANDARD.**

**A. THE BAIL REFORM ACT GOVERNS PRETRIAL DETENTION AND RELEASE.**

Under the Bail Reform Act, the court determines if conditions of release will reasonably assure the appearance of the person as required and the safety of the community. The relevant

factors in determining whether such conditions exist include the nature and circumstances of the offense charged; the weight of the evidence against the person; the defendant's history and characteristics, including his or her character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, substance abuse history, criminal history, and record concerning appearances at court proceedings; whether at the time of the current offense or arrest, the person was on release pending trial for an offense under Federal, State, or local law; and the nature and seriousness of the danger posed to any person or the community. *See* 18 U.S.C. § 3142(g).

## B. LITIGANTS MAY SEEK DISTRICT COURT REVIEW OF A MAGISTRATE JUDGE'S BOND DETERMINATIONS.

Each party has the right to request that the district court of original jurisdiction review the magistrate judge's bail determination. 18 U.S.C. § 3145. This is often referred to as an appeal to the district court. *See United States v. Runsdorf*, No. 22-40073, 2022 WL 1198205, at *3 (5th Cir. Apr. 22, 2022) (noting the government "appealed the magistrate judge's release order under 18 U.S.C. § 3145(a)(1)"). The district court's review is de novo, and it must make an independent determination of the proper pretrial detention or condition of release. *See United States v. Rueben*, 974 F.2d 580, 585-86 (5th Cir. 1992) ("[T]he district court acts *de novo* and must make an independent determination of the proper pretrial detention or conditions of release."); *United States v. Delker*, 757 F.2d 1390, 1394-95 (5th Cir. 1985). *United States v. Fortna*, 769 F.2d 243, 249 (5th Cir. 1985). That review is based upon both the record and any additional evidence presented. Thus, the "district court has discretion . . . to conduct a supplementary evidentiary hearing." *United States v. Hensler*, 18 F.3d 936, 1994 WL 83436 at *2 (5th Cir. 1994). Importantly, though, section 3145(a)(1) "has no new evidence requirement." *Runsdorf*, 2022 WL 1198205 at *3.

Even if no new evidence is presented, the district court is not to give any deference to the magistrate judge's order and, instead, must "reconsider the conditions of release . . . as unfettered as it would be if [the district court] were considering whether to amend [its] own action." *United States v. Thibodeaux*, 663 F.2d 520, 522 (5th Cir. 1981). In other words, the district court must conduct "an independent, from-scratch assessment of the evidence." *United States v. Cabello*, No. 25-40482, 2025 WL 2738463 at *1 (5th Cir. Sept. 23, 2025). A "district court commit[s] legal error by failing to review [a] magistrate judge's order de novo." *Id.*; *see United States v. Green*, 793 F. App'x 223, 226 (5th Cir. 2019) (unpublished) ("The district court's summary affirmance of the magistrate judge's order . . . was an abuse of discretion" (cleaned up)).

## IV.     ABBREVIATED ARGUMENT.

As explained above, the Government cannot fully and properly argue this Motion without the transcripts of the counsel determination hearing, status conference and detention hearing. For the time being, however, a stay is warranted based on the following:

### A.  THE BAIL REFORM ACT FACTORS FAVOR DETENTION.

The Bail Reform Act factors favor detention:

*The nature and circumstances of the offense charged:* Defendant viciously punched, kicked and bit the Detention Officers, and spat on them repeatedly. The photos above show the serious nature of her attack.

*The weight of the evidence against the person:* the video of the assault, which the Government will include with its perfected Motion, provides powerful evidence that Defendant assaulted the Officers, who themselves were acting as federal agents under contract from U.S. Immigration and Customs Enforcement. The Officers suffered injuries requiring treatment,

including a course of antibiotics. These facts fulfill the elements of the crime charged. *See* Fifth Circuit Criminal Pattern Jury Instruction 2.07 (2024).

*The defendant's history and characteristics/danger to the community:* Defendant has two felony convictions, including one for assault and a second for a crime she committed while imprisoned. The case agent, moreover, testified at the detention hearing that Defendant had been involved in two fights while in immigration detention. The fact that Defendant committed her second felony *and* this offense while incarcerated—namely, in the most controlled setting imaginable—indicates that her release into the uncontrolled circumstances of the community would pose an extreme danger to the public.

Finally, while Judge Palermo considered Defendant's mental illness as a driving factor for release, other courts have found the exact opposite. *E.g., United States v. Fitzhugh*, No. 16-mj-30364, 2016 WL 4727480, at \*5 (E.D. Mich. Sept. 12, 2016) (defendant's mental illness and suicidal ideation militated in favor of pretrial detention). Indeed, defense counsel seemed to suggest at the detention hearing that Defendant's mental illness was so severe that she may have had a clinically-significant misperception of why the Detention Officers were laying hands on her, making her violent reaction a manifestation of mania, rather than malintent. Such framing directs detention.

**B. THE GOVERNMENT STRONGLY DISAGREES WITH THE COURT'S CHARACTERIZATION OF THE EVIDENCE.**

Judge Palermo devotes much of her Release Order to excoriating the Detention Officers, insinuating that the Officers acted improperly and that those actions somehow undermine the weight of the evidence against Defendant and somehow exonerate Defendant. ECF 11 at 4-6. She writes, for instance, that the "incident was akin to a school yard brawl as opposed to law

enforcement acting in any kind of trained or professional manner to subdue a detainee." *Id.* at 4. There was, however, no evidence to suggest as much, such as testimony from a defense use-of-force expert. Moreover, the case agent testified that, following a complaint from Defendant's immigration attorney, both the Department of Homeland Security Office of Inspector General and the Homeland Security Investigations Office of Professional Responsibility reviewed the incident and found no wrongdoing by the Detention Officers.

Judge Palermo also claims that Defendant's second conviction resulted from untreated mental illness. *Id.* at 5. Again, the Government disputes this assertion as unsupported by record evidence. The Government believes that several of Judge Palermo's other findings lack any evidentiary support in the record, but cannot fully argue as much without the benefit of the hearing transcripts.

### C. THE COURT'S ACTIONS IN THIS CASE WERE UTTERLY IMPROPER.

As explained above, Judge Palermo's comments show that she effectively decided detention without first hearing evidence. Most seriously, her "suggestion" that the Government dismiss the charge was wholly inappropriate and, at the very least, creates an appearance of a fundamental and unfounded bias against the Government's case. Judge Palermo's comments and ruling cast her as a partisan advocate who actively tried from the outset to drive the case to her chosen outcome. Such behavior is flatly contrary to a judge's role as a neutral and disinterested factfinder. The District Court can only remedy the situation through a de novo review.

### V. CONCLUSION.

For the reasons stated above, the District Court should stay and revoke Judge Palermo's Order of Release, then make a *de novo* decision as to Defendant's pretrial detention.

Respectfully submitted,

JOHN G.E. MARCK
Acting United States Attorney

By:  */s/ John S. Ganz*
John S. Ganz
Assistant United States Attorney
Illinois ARDC #6289542
1000 Louisiana Street, Suite 2300
Houston, TX 77002
(713) 567-9920
john.ganz@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § § § | |
| **vs.** | § § | **CASE NO. 4:26-MJ-156** |
| **GRACE DAWN KIRKNESS** | § § § § | |

## ORDER GRANTING UNITED STATES' EMERGENCY MOTION
## TO STAY AND REVOKE MAGISTRATE'S RELEASE ORDER

This case is before the Court on the Government's Emergency Motion to Stay and Revoke United States Magistrate Dena Palermo's Order (ECF 11) granting pretrial release to Defendant Kirkness.

The Court GRANTS the Government's Motion. The Court hereby ORDERS that pursuant to 18 U.S.C. § 3145(a)(1), the Order granting Defendant's release from detention (ECF 11) is immediately STAYED and REVOKED pending a *de novo* decision on the issue of detention for Defendant by this Court.

Signed on March ___, 2026 in Houston, Texas.

THE HONORABLE ALFRED H. BENNETT
United States District Judge
Southern District of Texas

12

**CERTIFICATE OF SERVICE**

Undersigned counsel certifies that on March 13, 2026, a true and correct copy of the foregoing Motion was filed with the Court's CM/ECF system, which will serve a copy on counsel for Defendant Kirkness.

*/s/ John S. Ganz*
John S. Ganz
Assistant United States Attorney


**CERTIFICATE OF CONFERENCE**

Undersigned counsel has conferred with defense counsel Joel Bennett regarding this Motion. Mr. Bennett opposes the Motion.

*/s/ John S. Ganz*
John S. Ganz
Assistant United States Attorney